(No. 5061

CLIFTON W. BURGENER, Administrator of the Estate of MYRA J. BURGENER, Deceased, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 25, 1964.*

JAMES J. MASSA, Attorney for Claimant.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Clifton W. Burgener, Administrator of the Estate of Myra J. Burgener, deceased, seeks recovery of $25,000.00 damages arising out of the death of his wife on Monday, January 29, 1962, on Illinois State Route No. 157.

Claimant alleges that the State of Illinois, through its Division of Highways of the Department of Public Works

and Buildings, was negligent in that it permitted Highway No. 157 to be and remain in an icy and dangerous condition, and failed to warn the traveling public of the dangerous condition. The accident occurred several miles north of Bunkham Road on Highway No. 157 at approximately 8:30 A.M.

Claimant, who was not a witness to the accident, testified that his wife left their home about 8:00 A.M. on the day of the accident to take her granddaughter to school, and then proceeded to her own job as a school teacher. She did not ordinarily use Route No. 157 to travel to her place of employment. Prior to her demise, Mrs. Burgener had never suffered an accident, and was cited by the Secretary of State for careful driving about a year before the accident.

Edwin Barmann testified that he lived about 150 feet from the scene of the accident, but was not a witness to it. He arrived at the scene of the accident, and saw the car upside down, and a woman lying alongside. The highway was heavily iced, the ice extending from the curve south of his home to north of it, and was solid across the road. It had been heavily iced three or four days before the time of the accident in question. Mr. Barmann called the State Police Friday evening to report a minor accident on that particular stretch. He called them again Sunday evening, the night before the accident in the instant case, about 8:00 to report several accidents, which occurred that day. He told the State Trooper there were three accidents at the point in question between 6:00 and 8:00 P.M., and that they ought to put a sign out there telling people to slow down. The State Trooper said it would be taken care of. From 8:00 to 12:00 P.M. two more accidents occurred. The witness did not see any highway trucks or police vehicles investigating the accidents after he called them on Sunday.

8

Mr. Barmann further testified that he has lived in his present home for about twenty years, and the icy condition, which was caused by water running from the bluffs onto the road and freezing, had appeared with regularity. The condition was especially heavy the year of the accident.

Mr. Barmann had driven the road five times the day before the accident, and stated that no cinders or salt had been spread that day.

Norman Becker testified that he was traveling behind the deceased when the accident occurred. He testified that she was going about 35 to 40 miles per hour going into the curve on Route No. 157. The surface of the highway was iced starting just past the curve. He saw the ice about 12 or 15 feet from it, and could not see it earlier because of the curvature of the road. He observed no warning signs. He saw the Burgener car driving into the curve, and stated that the car was completely under control when she went around the curve, and was on the proper side of the road until she hit "that spot there, and she started fish-tailing back and forth". Until the curve, the highway was dry, and there was no snow, water, or ice on it. The ice covered about 400 feet or more on the east side of the highway, the side that Mrs. Burgener was traveling. The accident occurred at the foot of the bluffs, where the Burgener car overturned.

Velma Hartman was also traveling along Route No. 157 on the morning of the accident. She testified that, until one got past the curve, the ice could not be seen. "You are driving along as normal up to where you got up to that jut-off that obstructs your vision, and then, as soon as you got past that, you got ice." There were no warning signs posted or speed limit signs. She had driven that stretch of road for 13 years, and noticed that water had a tendency to accumulate. On the day of the accident, there were no

cinders, salt, or any other such thing on the ice. She also stated that the highway curves around the bottom of the bluff, and one does not see the next two or three hundred feet of highway until rounding the curve.

Robert Drummond, an engineer with the State of Illinois Division of Highways, testified that he was a maintenance field engineer, and the scene of the accident was in his territory on January 29, 1962. He was at the scene of the accident the afternoon after it happened, and there was no ice on the pavement. There were gutters located nearby, which were carrying water, and, to the best of his knowledge, the water was confined to the gutter, and did not extend into the highway.

Billy J. Barnhill, the State Policeman who arrived at the scene of the accident before the ambulance arrived, testified that he found the Burgener car with the wheels in the air, and there was a thin film of ice covering the surface of the road, which was caused by water seepage out of the bluffs.

Mr. Paul Jones was highway maintenance supervisor for the area, which included the scene of the accident. He went to the scene of the accident on the day it occurred. There was a thin sheet of ice on the pavement for several hundred feet. He testified that salt and cinders had been applied the Sunday afternoon before the accident. At that time there was water and no ice, and the section man applied the abrasive to the moisture. Water comes out of the hillside at that point all year around. There were no signs warning northbound traffic between Bunkham Road (where the deceased had entered Route No. 157) and Caseyville, but there were signs in the area warning of the conditions on Route No. 157. He was aware of the water formation, and the ice in the area in question whenever the temperature dropped prior to the Winter of January, 1962.

Alfred Kassing, highway section man with the Division of Highways for the area in question, testified that on the morning of the accident he arrived at the scene of the accident, and was at that time spreading salt and cinders. He had spread salt and cinders the previous day on instructions from Mr. Jones, who told him to hit all the spots on Route No. 157, which might freeze. He spread salt and cinders about twice a day.

Another engineer for the State testified that he came upon the scene of the accident and saw ice, but he saw no cinders at the point of the accident, but rather the cinders he saw appeared to have stopped about 300 feet from the scene of the accident.

While the State is not liable for injuries from the natural accumulation of ice and snow (*Levy* vs. *State of Illinois*, 22 C.C.R. 694), it may be held liable for failure to warn the traveling public of the dangerous condition of a highway caused by an unusual accumulation of ice, where it has had notice of such condition. (*Bovey, Et Al*, vs. *State of Illinois*, 22 C.C.R. 95.)

There is substantial evidence in the record showing that the State had notice not only of the condition of the area on Highway No. 157, which had long tended to an unusual accumulation of ice and water, but it, in fact, had notice of several accidents the very evening before the one in question occurred. It would seem that the erection of signs or signals is the least action respondent should have exercised. If cinders were spread at that point, they were not spread in such a manner as to be reasonably effective under the circumstances. There were no signs posted upon Route No. 157 within the one-tenth mile between the icy condition and Bunkham Road where Mrs. Burgener turned onto Route No. 157.

Respondent contends that claimant has failed to establish that deceased was in the exercise of due care. Testimony of the eye-witness to the accident, Norman Becker, refutes respondent's contention, and, in fact, indicates that the deceased was in the exercise of due care for her safety. The witness himself did not see the ice until he was only 12 or 15 feet from the accumulation, the rest of the highway being dry.

It is the opinion of this Court that claimant be awarded damages in the sum of $10,000.00.