(No. 76-CC-0854-

PATRICK J. KELLY, Individually and as Executor of the Estate of Catherine Kelly, Deceased, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 26, 1981.—Award affirmed on rehearing October 21, 1981.*

ZIMMERLY, DODD, ANSEL & STOUT, for Claimant.

TYRONE C. FAHNER, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

HOLDERMAN, J.

This is a claim brought by Patrick J. Kelly, individually and as executor of the estate of Catherine Kelly, deceased, who was his wife.

This claim arises as a result of an accident that took place on December 23, 1973, at the overpass of Route 128 and Route 70, in Effingham County.

The accident occurred on that section of the road that was carrying eastbound traffic. The west side of the overpass, which was the side that traffic bound in an easterly direction would have to climb, was wet but was not ice covered. At the crest of the overpass and on the downward slope to the east, it was ice covered and slippery. As a result of this icy condition, four cars, after coming up over the crest and striking the icy portion of the overpass, slid off the highway.

State Trooper Davis had been directed to the scene to help clear up the situation and to prevent any further

accidents. Three of the cars had been removed and the wrecker was pulling the fourth car back onto the highway which blocked the eastbound traffic. At approximately 12:00 noon, a Ford motor vehicle came over the crest, followed by a National Carrier truck. They were not aware that the eastbound lane was closed because that could not be observed until they reached the peak of the overpass. Both vehicles slowed down and were proceeding slowly down the overpass when a yellow Freight Systems truck approached from the west and attempted to pass both the Ford and the National Carrier truck. When it hit the ice, the yellow truck struck the National Carrier truck, knocking off one of its front wheels, and it then hit the Ford vehicle, knocking it off the road. Directly behind the Freight Systems truck was a Dodge automobile driven by Mr. Kelly who was accompanied by his wife. When the National Carrier truck was stopped abruptly on the ice, the Kelly vehicle, which was unable to stop, slid into the National Carrier truck. It suffered severe damage to the front of the truck and it was evidently sideswiped by the Freight Systems truck as it also had severe damage to the rear end. As a result of the Kelly car sliding into the truck, Catherine Kelly was killed and Patrick J. Kelly was seriously injured.

Mr. Kelly's injuries consisted of a severe injury to his knee that resulted in an operation and his leg being shortened by perhaps one and one-half inches for an extended disability. He also had other injuries, including the amputation of a finger and extended disability to his arm.

Prior to this accident, Patrick J. Kelly was a healthy man, had no physical disabilities, and was working full time as a carpenter. He was 56 years of age. As a result of his injuries, Mr. Kelly is no longer able to work.

Catherine Kelly was 65 years of age. She was not employed outside the home; however, she was a very active person in social and civic duties in her community.

We therefore have a situation in which traffic traveling to the east over the overpass on wet, but not slippery, pavement abruptly came to the crest of the overpass and immediately found themselves on ice-covered pavement so bad that four vehicles had, the morning of the accident, slid off the pavement. The problem was complicated and made more dangerous by the fact that the tow truck pulling the four vehicles back onto the road effectively blocked the east lane so that traffic traveling to the east had to contend not only with the slippery conditions on a downgrade, which could not be ascertained until the crest of the overpass had been reached, but also with a blocked pavement.

Trooper Davis gave the driver of the yellow Freight Systems truck a ticket for driving too fast for conditions. He did not give tickets to any of the other drivers involved in the accident.

It is Claimant's contention that the State was negligent in not warning the traveling public of the dangerous conditions that existed and in failing to divert traffic from that portion of the highway which was blocked or obstructed by reason of the prior collision and the removal of the vehicles.

It is Respondent's contention that the flares put out by Trooper Davis and other personnel at the scene should have adequately warned the traveling public that a dangerous situation existed and they should have had their vehicles under control to avoid accidents.

The evidence shows that Mr. Kelly was a full-time

carpenter who had worked for one employer for approximately 22 years and was working for him at the time of the accident. In 1972, his income was $10,100. His physical problems include immobility because of damage to his left knee and it remains straight and stiff nearly all the time. This affects his ability to climb in and out of cars and prevents him from climbing ladders and stairs. He lost a finger on his right hand and cannot grip a hammer or saw.

At the time of the hearing, the carpenter rate was $12.00 per hour.

The record is clear that before the accident, both the Kellys were in good physical condition. The medical treatment received by Mr. Kelly was for multiple rib fractures, a fracture of his right wrist, a traumatic amputation of his right ring finger, a comminuted fracture of his index finger, and a severe injury of the left knee resulting in disruption of the medial collateral ligament. Exploratory surgery was performed on the left knee with repair of his medial collateral ligaments, removal of the medial meniscus, and reconstruction of the medial aspect of the joint. The amputation of the right ring finger was revised and the fracture of the right index finger was fixated. He was placed in a long arm cast after closed reduction of the radial fracture. He was further treated with bed rest and physical therapy for his hand and knee.

This accident occurred in December 1973 and he was released from the hospital in March 1974. In August of that year he was examined by a doctor and found to have no movement in the small finger of the right hand and a mild deformity of the forearm. It appears he had suffered approximately 40% permanent physical impairment to the right hand and a 40% permanent physical impairment to the left lower extremity.

Mr. Kelly's hospital and medical bills were in the amount of approximately $14,000 and it appears that his lost earnings would exceed the sum of $75,000.

It is interesting to note that after the Kelly accident in which two trucks and two cars were involved, the State belatedly diverted traffic around the overpass. Unfortunately, as far as the Kelly vehicle was concerned, the diversion came too late because had it occurred earlier, Mrs. Kelly would undoubtedly be alive and Mr. Kelly would not have suffered the injuries he sustained.

Claimant cites *Burgener v. State* (1964), 25 Ill. Ct. Cl. 6, where the Court made the following observation:

"Where record indicated Respondent had notice that particular highway tended to an unusual accumulation of ice and water, and that Respondent had, in fact, known of several accidents the previous night, Respondent was held to have had actual notice of dangerous condition of highway."

The Court further stated that "Respondent had notice of dangerous condition of highway and was negligent in failing to erect signs to warn the traveling public." The same case laid down the following rule:

"While the State is not liable for injuries from the natural accumulation of ice and snow (*Levy vs. State of Illinois*, 22 C.C.R. 694), it may be held liable for failure to warn the traveling public of the dangerous condition of a highway caused by an unusual accumulation of ice, where it has had notice of such condition. (*Bovey vs. State of Illinois*, 22 C.C.R. 95)."

There can be no question that the State had notice of the condition of this particular area because of the accident that had occurred at approximately 8:00 a.m. that morning and the fact that the State had sent various State troopers to the scene to try to alleviate the situation. The Respondent added to the danger by blocking the east lane of traffic with a tow truck that was removing the cars that had slid off the road. This, in the Court's opinion, created an exceptionally hazardous condition because the blockage of the road could not be ascertained by the traveling public until they had reached the

crest of the overpass. It is true that the State had placed flares along the highway but with the foggy conditions that existed at the time of this accident, it was extremely doubtful that flares could have been of the help they would have been under normal conditions.

It is the Court's opinion that Mr. Kelly was not guilty of contributory negligence and that the State failed in its duty to protect the traveling public.

An award is hereby entered in the amount of $25,000.00 for the loss of life of Catherine Kelly, and in the amount of $100,000.00 for the injuries and loss sustained by Patrick J. Kelly.